JOHN WYROCK, MINNEAPOLIS LAW FIRM, DICKIE BILLIG & SAGE The 101 patent and the 231 patent, both of which are related. There were two bases of dismissal that we're going to be addressing. First, relying on a theory of res judicata, the lower court erroneously determined that the patent action based on the 101 patent should have been raised in a prior trademark action involving the parties. Specifically, relying on 8th Circuit law, the district court found that both lawsuits arose from the same nucleus of operative facts, namely, Thor's offering for sale of its FB undercarriage technology in the United States. This was clearly erroneous, both factually and legally, as a conclusion by the district court, and we believe in large measure that was due to the failed use of 8th Circuit precedent. Mark, does it make any difference here whether we look at this case through the lens of 8th Circuit law or Federal Circuit law? I mean, it doesn't seem that on the issue we're dealing with, this res judicata issue at least, that it really, that the laws in either circuit is much different. The res judicata laws of both circuits are very similar, there's no doubt. The comparison of the standard is very near identical. The substantive law of the Federal Circuit, however, does view the facts of this case through a different lens. The issue in the prior case that the court was dealing with in drawing a conclusion that Superior should have brought an action for patent infringement had to do largely with the advertising materials that were at issue in that trademark action. And that was the only basis for the trademark action, was the distribution in the United States of advertising materials that made use of Superior's registered mark FB. And those advertising materials did have information about products that were at issue now in this later patent infringement action, but that's all that was contained in those advertisements, was information. There was no other data about the pricing on that, no other information that somebody could rely on to say, I accept. I'm going to buy one of these on the terms that you've set forth. You're saying the advertising was not an offer for sale. That's exactly right. Was it adequate evidence of use or making of the claimed invention? It's evidence that there may be some use, but we had no information about that evidence. We had no information of any offers for sale or sales. At that time, the only information that we had was an initial distribution, or actually it was an initial launch of a press release on the website in the Canadian website for the defendant. It was only on that website for a very short amount of time. It disappeared as far as we were concerned for at least two years. And in 2009, then Superior began to learn that the same types of advertising materials were being distributed in the U.S. That was all the information that we had. We had no other knowledge or information of any offers for sale or any sales. We specifically pled that in our trademark action, that we had no knowledge of any commercial activity in the United States. The sole focus was to eliminate a market impression that the two companies had somehow become affiliated with respect to this technology. And we wanted to eliminate the confusion by halting the infringing use of our registered mark in the letters FB. The other issue that the district courts dismissed in the patent action related to the 231 patent, that was under Rule 12b-6 of the... The basis of res judicata is a pretty heavy hammer to drop on somebody. And it's pretty hard to drop that hammer if we're basing it on a speculation that someone maybe could have raised an argument. Where does that come from? Where does that speculation... Yeah, where does that... We always say in res judicata generally, that's something that has been litigated and completely disposed of, and you don't get to come back and re-litigate something that's been argued completely. And now this is being done because... Not because you litigated it, but because you might have. Well, you're right. The court erred in concluding that we should have brought the patent case. I was hoping you'd say to me that comes from the Supreme Court's moiety opinion. I'm sorry, Your Honor. I don't have that to offer to the court. Well, that does have... It could have raised point in it, but does the holding in moiety stand for that proposition? I'm sorry, Your Honor. I'm not familiar with that case to be able to comment. It doesn't, but... What I do know is that, as a matter of fact, Superior was not in possession of any facts, and the record that was before the court did not support that there was any basis for asserting a patent infringement action. The could have was erroneously based on a view of the advertising materials as evidence of offers for sale. The Eighth Circuit precedent doesn't view advertising perhaps with the same critical eye that this circuit does. And so the court was able to, because of a more general view of that type of material, the court was able to erroneously conclude that that was evidence that there was commercial activity in the United States. What was the purpose of the advertising, if not for commercial activity? We agree that advertising is preliminary to offering for sale, but, Your Honor, we had no evidence, and we were trying to... We had an issue before us of one wrong, trademark infringement. We didn't have information before us that we were trying to learn. We could have waited to try to learn that information. And in the meantime, the market confusion was going on. We intended to address the wrong that was before us with the facts that were before us. If subsequent facts developed that informed us, so be it. But at the time, the only facts that were before us were the facts of an advertisement and the confusion that that was causing in the marketplace. We were able to and did successfully conclude that trademark infringement action was a consent judgment. So it was the only wrong that we had knowledge of. And there's no doubt that it's usually evidence that somebody is intending to try to commercialize, but we had no evidence of offers for sale. Certainly, if we had sued on the advertising for patent infringement, a 12B6 motion would have likely successfully been brought because, by itself, it would have been argued that does not support a claim for patent infringement. Let me ask you, you were going to start talking about the 231 patent issue, and if I understand it correctly, and please tell me if I'm wrong, the district court said the problem with your count relating to the 231 patent was that you based your contention of infringement upon admissions made in the trademark suit. Those admissions, though, being made prior to and relating to a period prior to the issue of the 231 patent. Now, that seems to me to be a pretty good argument. Leaving aside the 101 patent for a moment, that seems to be a pretty fair point. You can't have infringement of a patent before it issues. There was no evidence or indication that the admissions of sales and offers for sale were limited in time. There was no admission that we only intended to sell it until we learned that the 231 patent issued. As a matter of fact, you know, the district... But the admissions were made prior to... The admissions, exactly, the... Were prior to the issuance of the patent. The answer was made only slightly less than three months. It's fairly contemporaneous, I believe, if you're admitting activity within a matter of months before the patent grants. I've added a number of patents in cases where there's never been a required showing that the defendants are continuing in the infringing activity to justify adding a newly granted patent to a patent case. But this is an example where out of abundance of caution, we did go back to Thor and ask him, what are you... In fact, are you doing in the U.S.? The intent there was to eliminate the use of our mark in their advertising. But their intent was to continue to advertise, and we thought perhaps they might reconsider that decision in view of the trademark action. When you say you went back to Thor, your client went back to Thor, were these kind of not court-sanctioned discussions? These were just informal... These were informal discussions. We want to make sure and clear that we don't have a patent infringement battle if one is not necessary. If, in fact, you ceased making this type of undercarriage product and you've gone back to your old design, then there's no need for a patent infringement battle. Please tell us what you're doing. And the answer that we got back is don't worry, it doesn't infringe. One question I have, and I will confess, I know what the patents relate to generally, the loading devices, but what is the main difference between the 101 and the 231 patent in terms of their scope or their coverage, what they speak to? They're very similar in scope. I would say the 231 has slightly broader, fewer limitations on the claims, but they're directed to essentially the same subject matter. I was aware of that, but I just wasn't sure of where the dividing point was, but that's helpful. As we indicated in our briefing, we have analogized the 231 patent dismissal and our attempts to try to get confirmation of Thor's activity in the U.S. according to the Hoffman-LaRoche case. It wasn't a 12B6 case, it was a Rule 11 case, but the facts otherwise are fairly similar. The outcome should be similar, that when the plaintiff asks the defendant, what are you doing? And the defendant says, we're not going to tell you, or they play coy with the answers. The defendant there brought an action and subsequently was met with a Rule 11 motion for failure to have adequate facts to bring its patent infringement case. This court agreed with the district court that the plaintiff was justified in bringing its action. When you ask somebody, what are you doing? And all they have to say is, don't worry, we stopped, and that avoids a patent infringement case. When you start giving roundabout answers and coy answers or evasive answers, that usually is a sign that the activity is continuing. And, in fact, we did receive an opinion from Thor's U.S. counsel saying that the undercarriage in question did not infringe. Do you want to save the rest of your rebuttal time? Yes, I would. Thank you very much. Let's do that, and let's hear from Mr. Holland. Thank you, Your Honor. May it please the court, Chris Holland from the Craig Keller Law Firm in San Francisco. This case, very simply, is about claim splitting. Superior wants to be able to split off a patent infringement. Well, it's about res judicata, meaning that they have already litigated this claim, but how could they have litigated it? Even if we adopt an unsubstantiated, should-have-been standard for res judicata, how could they have brought a claim based simply on that advertisement? Very clearly, Your Honor, based on what they decided to put in that pleading and what they're now taking the position is, we decided that we're only going to look at the advertising itself, we being superior. They certainly were aware of what those products were. This is not a LaRoche situation. This is not a situation where an ANDA is out there with a generic drug, where we have a method patent. But how could they have brought a patent case based on the advertising? They could not have brought a patent case based on the advertising. We agree with that. Then what else is there that was decided in the first case that bars any re-litigation of a patent case in the second? The knowledge that they had of their own intellectual property portfolio, as well as the publicly available knowledge about the products in question. Because, as I was saying, this is not a situation where it's a method patent or something being done in secret, where they need to make these inquiries like we're doing in LaRoche. But they're dealing with a trademark case. They're dealing with FB, the trademark, not whether there are technical structural components that infringe a patent. I understood, Your Honor, but that FB that they're talking about is placed on a 150 to 170 foot long crane or conveyor system. To say that, well, they could see very clearly they had a trademark problem, but the forest right in front of them was not available to them. I don't believe it was the proper analysis because... Did they litigate that forest? I believe they did because they purposely put in the 947 patent to beef up their allegation that they were the superior user and the senior user of FB. It was a trademark action. They were saying, this is our trademark. Where did they ever say, you're making, using, selling our claimed invention? They didn't make that allegation because they didn't want to, Your Honor. Did they ever litigate it? I believe they did because they put the 947 at issue in that complaint. They expressly pled the parent patent trying to make them... As evidence of their prior entitlement to the trademark, not because you were an infringing party of the patent claims. Well, again, that was their voluntary election, Your Honor. The reason they... You would have had claim charts. You would have had significant discovery on the scope of the patent, Markman hearings. Did all of that happen? No, it did not, Your Honor. The point is, it should have happened based on the knowledge that they had available to them. Is that even established in law? Show me where that's established. I believe that the Moiti case, I'm not as familiar with it as Your Honor. I apologize. It wasn't something... Well, the holding in Moiti, there is dicta in Moiti that says should have. There is not a holding. And I'm not aware of any circuit that is held that we're going to drop the hammer of res judicata on someone before they've actually litigated and had an issue decided against them. In fact, the additional requirement for res judicata is that the issue decided was necessary to the holding of the prior case. Now, was there a necessary holding of patent infringement involved in a trademark case? No, there was not, Your Honor. And how do we get to res judicata? Because of the fact that this was a voluntary decision and a voluntary dismissal. There were no findings of anything except for the consent judgment. Again... Well, in that case, I'd expect a non-prejudicial dismissal in this case, wouldn't I? Except that this cuts them off without any chance to ever return. Well, again, perhaps it goes back to whether the Eighth Circuit law applies or not. There was law cited by the court in terms of the Eighth Circuit law about what could have been litigated. And I think that in terms of the court's analysis, certainly I would think the court would agree that if one brings a claim for breach of contract, one cannot then say, I've had that claim decided, I've decided to dismiss it voluntarily, and now I've decided, based on what I learned during the course of that action, that I'm going to bring a claim for fraud. On the exact same sales of the exact same products under the exact same timeframe, the exact same evidence as it is. That is, in this case, or even close to it, isn't it? I believe it is, Your Honor, because they're sitting there with... How could they have brought a patent case based on that advertisement? They couldn't have on the advertisement. They couldn't have. They had to engage in discovery to discern whether your product was identical to the claimed invention. They never did that, did they? Actually, Your Honor, they had to, prior to even filing a case, and prior to filing a case if the court remands now, they need to show that they have actually investigated and made the determination the court just spoke of. Have they done? And they didn't even attempt that, did they? I don't believe they still have, Your Honor. So how did they litigate it? Remember, they have to have actually litigated it, and it was decided against them, and therefore we're not going to let them litigate it again. I apologize, Your Honor, because... You just admitted they haven't litigated it, so how can they be foreclosed from their first chance to litigate this issue? Respectfully, Your Honor, what I said was they hadn't done their necessary pre-filing investigation. What they had done was attempt to expressly assert the 947 patent to beef up their FB claim because they know, as they said... No, no, no. Did they assert a patent action against you for infringement of a patent? They did not. Then how can they be foreclosed from doing it for a first time? Because they were in possession of sufficient information to make that assertion at the time... Is this what you argued to the district court? That's correct. Then you'll understand the nature of the error. Well, again, the case law they're relying upon to make this distinguished... First of all, there is no case out there that says you can make this type of splitting and say that res judicata does not apply. The cases they've relied on instead show that something new must have happened by the defendant. The Florida Power and Light case, for example, the Department of Energy rendered a new opinion, and that was then held to be sufficient to go forward. There's no need for them to do a pre-filing investigation of patent infringement before they intend to make a patent claim, is there? They're just on a trademark case. They're entitled to the mark FB. They're not trying to show that your extended conveyor belt is copying theirs. Again, Your Honor, they filed a Rule 11 complaint that cites the parent patent to the two patents at issue. My client ought to have some ability to rely on that to assume that if you know that... If you were sued for patent infringement and you never had a patent. No, Your Honor, the converse. You have said, I own this patent. Here's my patent that I'm aware of. I'm sitting here. I'm going to put it into a complaint at federal court. I'm going to come after you. But I'm not going to assert it against you. What the court is saying, it appears, is that my client has no entitlement to say, well, they must have looked at that patent and decided they can't assert it against them. So they put it in a pleading. Did you file a D.J. saying we would like an assertion that we're not infringing? No, Your Honor, there were no D.J. files. No, you shouldn't have because, of course, they didn't accuse you of infringement. And the question then becomes, when you say in a filed pleading, I have this patent and I'm voluntarily electing not to assert it against you, does that have an impact or not? No, you're just saying it is evidence of a trademark because we own this technology which shows that we also own the mark associated with it. That's a little different from saying you infringe our technology, isn't it? It is, except they didn't say that, Your Honor. They said simply they own the patent. They didn't actually make the connection that the court just made in terms of this is evidence that we own the trademark. In fact, they said back then, and they are saying still in the briefing, that the superior user actually was my client in October of 2007. And they were very concerned about a finding that would result in that because it would invalidate the pending application they had for their FB mark. They couldn't come in and have an established statement that this October 7th was the first use in commerce of 2007. They were using the 947 patent to buttress their priority argument. That's exactly what they were doing. And my point is that you ought not to be able to come in and have it both ways, which is what they're trying to do. They're trying to say, I get priority over you because I have this patent application pending. And yet at the same time, I have no consequences for waving that around and trying to utilize it in an offensive manner. Let me ask you this, just as a general sort of question. Someone has a patent, they have a trademark. Yes, sir. They have a mark. They look out and they see someone, in their view, infringing their mark. Yes, sir. They think, well, we clearly think they're infringing our mark, but we're not sure if they are doing anything with respect to patent infringement. So we're just going to go with the mark and we're not going to spend the money and we'll just see if that solves the problem. Is there anything wrong with that? I believe there is, Your Honor, because you're sitting there as the patent holder with what we can analogize to a deck of cards of IP rights. You're saying, I have a series of transactions and occurrences that this defendant is engaging in. They are wrongfully infringing some or more of my patent or trademark rights. The damage that's occurring is going to be occurring with respect to the same sales, the same products, all the same evidence that's going to be involved, and how much money they're going to be entitled to in terms of proportionality between a trademark claim and a patent claim ought to be decided simultaneously. It is their property. They get to decide when to assert it, don't they? They do. It's their property, not yours. Absolutely, Your Honor, except if I am dragged into court and part of the property is... On the trademark action. And you have to defend yourself on the trademark action. Have you been sued on patents? No. I've just been advised that they have one and they've elected on it. They have one, yes, but you knew that before. Actually, that's not true, but... Well, it doesn't matter whether you did or not. It's a public record. You should have. Therefore, maybe we should sue you for failing to bring an action you should have brought as a declaratory judgment to clear your name of patent infringement, right? No, Your Honor, respectfully, since they had not... It's their property right, not yours. It is, but that's, again, I go back to other types of property. When someone comes wrongfully onto my property and I want to sue them for trespass, I can't have that lawsuit, go through the decision to make a consent judgment, resolve it, let that person think, okay, I'm done now, I'm going to proceed with my life, and then say, oh, wait, while you were here, you actually broke my lamp. You did some other things here. I'm going to come up with some new tortious claims against you for what was the exact same conduct in the exact same time period by the exact same party. Did they ever sue you for trespass of their patent rights? No, they did not. So that whole hypothetical completely dissolves, doesn't it? I don't believe so, Your Honor, because the transactional analysis under either the Eighth Circuit or this court's precedent is based on conduct by the defendant and what conduct gave rise to the allegation. Actually, our precedent is Acumed in which we dealt with a similar situation and found directly against you. Are you aware of Acumed? Yes, Your Honor, I am. How would you distinguish it? I don't think you can. I don't. I believe in Acumed. I'm sorry if I'm not recalling correctly, but I believe in Acumed there was new conduct by the defendant in the later action. And I believe that that comports with what I was saying about Florida Power and Light as well as Chrome Alloy. No, there were two models. The patent owner sued only on one of the models, knowing of the other, but didn't sue on the other. They were free then later to sue on the other model because that issue had not been adjudicated. Actually, it's an even more difficult case than this one because the first suit was a patent action. The first action in this one is a trademark action that never even asserted patent rights. Acumed's even a tougher case than this one. I apologize, Your Honor. Again, what I'm trying to draw the distinction is there was a different set of conduct, a different design, as the court just mentioned, in Acumed that was at issue in the second case. That's not the case here. Since 2007, since the very first advertisement, the precise same structure, the precise same material, the precise same advertisement, the precise same document sales, everything is all the same in terms of what Thor has done. Nothing has changed, and they are simply selectively deciding to sue on this model. That's just your allegation. The record of patent infringement has never been made, has it? We don't know what your accused device does or how it does it. We've never gotten to that issue, have we, or when it was first devised or when it was first sold. We don't know any of that. Based on the record, Your Honor, you're absolutely correct. So you're just giving us argument there. I apologize, Your Honor. I'm simply basing it on the record that, again, they do have some duties here in the court. I apologize that my client would have to follow up. When they sue you, they haven't sued you yet. I appreciate that, Your Honor. Again, just to clarify, the position we have is that we believe when you assert the patent and then don't state something about it, that something ought to attach. If they had asserted the patent, they didn't. They asserted their trademark. Understood, Your Honor. All right. Thank you. Let's hear from Mr. Weirach on his response. Your Honor, unless the court has any further questions, I would waive the balance of my time. I think we're fine. Let's go ahead.